*565 OPINION OF THE COURT
Renee R. Roth, S.
The issue in this probate proceeding is whether the executor named in decedent’s will, who seeks to take depositions (SCPA 1404) and to file objections to the codicil that replaces him, has, by waiving commissions, avoided the requirement of “good cause” that is ordinarily set for such an applicant under the governing statute (SCPA 1410).
Testator Harry Torczyner was a lawyer, as are the two competing nominated fiduciaries. Under the propounded will, dated January 28, 1996, Mr. Torczyner named Stephen Weiner as executor and trustee; under the codicil, dated November 5, 1997, testator designated instead Gary Freidman. The codicil made no dispositive changes in the will, which puts the bulk of the estate (valued at over $15 million) in trust for the life income benefit of testator’s wife, with remainder to his issue (presumptively, the couple’s two daughters). The instruments limit the fiduciary to one half of the commissions prescribed by statute.
In a relatively early will, testator had named his wife as executrix and Freidman as her successor. In his next will, testator (for reasons discussed below) replaced Freidman with Weiner, whom he eventually named as primary executor and trustee in a third instrument (the propounded will). Freidman was designated as successor in that will and replaced Weiner as primary fiduciary in the last testamentary instrument, the codicil at issue here.
The widow and the daughters have filed waivers and consents to probate of the will and codicil. The widow’s capacity to execute such an instrument was questioned by Weiner early in the proceeding. Accordingly, a guardian ad litem was appointed to ascertain her status. After extensive interviews with the widow and her doctors, among others, the guardian reported that her ward, although frail and depressed, did indeed have capacity to execute the waiver and consent; that the widow apparently was neutral as to Weiner, but felt warmly toward Freidman and found comfort in the prospect that he would be serving as her fiduciary; and that the widow was anxious to see an end to the litigation.
It is noted that the will has been admitted to probate and preliminary letters testamentary issued to Freidman. The only question is whether he or Weiner is to be appointed permanent executor and trustee.
*566 SCPA 1410, which defines standing to file objections to probate, provides that: “one whose only financial interest would be in the commissions to which he would have been entitled if his appointment as fiduciary were not revoked by a later instrument shall not be entitled to file objections to the [instrument which removes him] unless authorized by the court for good cause shown.”
To demonstrate that his financial gain is not a motive here, Weiner has stated his intention to forgo commissions. The issue is whether such waiver is enough to relieve him of the requirement under SCPA 1410 that he establish “good cause” for filing objections.
Although there is no judicial comment on this question, an analysis of the legislative intent with respect to SCPA 1410 and a practical view of the stakes involved in the naming of a fiduciary compel the conclusion that such statute applies to a displaced fiduciary even if he has waived commissions. As the legislative history confirms, the requirement of “good cause” under SCPA 1410 was designed to prevent a would-be fiduciary — for his own purposes and absent good cause — from “thwart-ling] an amicable adjustment of issues by the family” or from frustrating the wishes of the family if there is no issue to be adjusted within it (Mem of Surrogates’ Assn, 1971 NY Legis Ann, at 9). The requirement thus was clearly intended to shield an estate from unwarranted costs and delays of litigation prompted by someone whose only stake in the estate is solely as a designated fiduciary. A waiver of commissions does not per se demonstrate that a fiduciary’s proposed objections are selfless and thus beyond the need for a demonstration of “good cause.” After all, more than money may be gained or lost when a fiduciary is named or displaced, since the prospect of enhanced authority, influence and status inevitably inheres in such appointment. It is concluded therefore that the “good cause” requirement of SCPA 1410 applies whenever the proposed objectant’s purpose is to install himself in office as fiduciary for whatever motive — financial or otherwise.
It is noted that Weiner states that his purpose is to honor decedent’s intentions (concerning the administration of the estate and trusts under the will) as he believes them to have been. The facts, however, do not support his claim to “good cause.”
Freidman first came into the picture in 1982, when he worked on certain cases that decedent had referred to the firm of Greenfield Stein & Senior (GS&S). The professional connec *567 tion between the two apparently broadened into a friendship, with Freidman visiting the Torczyners’ home and spending time as their guest abroad. By 1990, decedent had chosen Freidman to serve as successor executor under his will.
Weiner, on the other hand, first met the Torczyners in 1991, in connection with some legal matters involving decedent and his law office. By early 1994, decedent told Weiner that he had made a new will substituting Weiner for Freidman as successor executor because he was angry with GS&S, which (as testator saw it) had closed him off from an active role in certain matters that he had referred to the firm. Testator did not apprise Freidman of the change until years later, and then only in order to reverse it.
By early 1996, decedent told Weiner that he wanted to change his will because of his wife’s deteriorating mental capacity. Weiner referred testator to another lawyer, who prepared the January 25, 1996 will naming Weiner as fiduciary. Despite his prior remarks concerning GS&S, testator nonetheless named Freidman as Weiner’s successor.
In 1997, testator’s earlier-diagnosed prostate cancer had spread and his physical and mental condition required that he be hospitalized in early September and again toward the end of October. At some point during this period, concerned that testator was not paying various bills, including those incurred for his wife’s nursing care, his family asked Weiner to institute a Mental Hygiene Law article 81 guardianship proceeding for decedent. Weiner declined on the ground that decedent himself, avowedly out of concern for appearances, had earlier decided not to seek such a guardianship for his wife. The family then turned to Freidman, who filed an article 81 petition for them on October 29, while decedent was still in the hospital.
On November 3, 1997, decedent, significantly improved after the elimination of certain medications that had contributed to his mental difficulties, was discharged from the hospital. Two days later, the family withdrew the article 81 petition. On the same day, Freidman and a partner came to testator’s home and witnessed the execution of the codicil, which Freidman had drafted. According to these attorneys and the family (including testator’s only sibling, Jacques), testator removed Weiner because he had failed to come through on his promises to use his political connections to obtain an ambassadorial post for testator.
Weiner for his part claims that there was no rift and that he assisted decedent until the time of his hospitalization in *568 October 1997, when the family kept him away from Mr. Torczyner. Weiner’s theory that the codicil resulted from the family’s actions is based upon speculation, which is not enough to satisfy the good cause requirement to challenge a propounded instrument (see, Matter of Hatzistefanou, 77 Misc 2d 594; Matter of Molnar, 76 Misc 2d 126; Matter of Lerner, 72 Misc 2d 592). Nor may he be given leave to search for facts to support his speculations by taking discovery. As this court noted in Matter of Peckolick (167 Misc 2d 597, 600), the statute allows a replaced fiduciary standing as an objectant only where, “because of his special relationship with the decedent,” he is personally privy to facts that may be otherwise unknown and that amount to good cause. Moreover, Weiner’s claim that decedent would not have executed the codicil had he known of the article 81 filing made by Freidman is belied by the unrefuted affidavit from a disinterested witness, decedent’s brother Jacques, who attests that — prior to decedent’s discharge from the hospital — he had apprised decedent of Freidman’s role in the guardianship petition.
Finally, it is observed that an affidavit from testator’s doctor attests to testator’s mental competency at the time he executed the codicil; that, even at the height of his disaffection with GS&S, testator still had named Freidman as a fiduciary; and that Weiner does not suggest (much less show) that decedent’s testamentary plan or concern for his family’s welfare would in any way be undermined if the codicil is probated.
Based upon all of the foregoing, the motion for leave to take depositions and/or file objections is denied.